**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 25 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

GFF CORPORATION, an Oklahoma
Corporation,

      Plaintiff - Appellant,

vs.

ASSOCIATED WHOLESALE
GROCERS, INC., a Missouri
Corporation,

      Defendant - Appellee.

No. 96-6287

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CIV-95-141)

---

Andrew L. Walding (Mark K. Stonecipher with him on the brief), Fellers, Snider,
Blankenship, Bailey & Tippens, Oklahoma City, Oklahoma, for Plaintiff -
Appellant.

William F. High (James M. Warden and Linda S. Skaggs with him on the brief),
Blackwell, Sanders, Matheny, Weary & Lombardi, Overland Park, Kansas, for
Defendant - Appellee.

---

Before BRORBY, MCWILLIAMS, and KELLY, Circuit Judges.

---

KELLY, Circuit Judge.

---

GFF Corporation (GFF) appeals from the dismissal of its breach of contract claim and the grant of summary judgment on its fraud claim. Our jurisdiction arises under 28 U.S.C. § 1291 and we affirm.

Background

During 1994, Associated Wholesale Grocers, Inc. (AWG) prepared to buy a number of grocery stores from Homeland Stores, Inc. (Homeland) for resale to members or potential members. GFF expressed interest in purchasing a Homeland store located in Norman, Oklahoma, from AWG. At a meeting in Oklahoma City on December 14 representatives of AWG provided GFF's president with a typewritten bid form, in the form of a letter, to be executed and returned to AWG. On or about December 21, GFF executed the December 14 letter and submitted its $350,000 bid on the Norman store.

On January 17, 1995, AWG informed GFF by telephone that it was the highest bidder and would get the store. On January 19, after telling Pratt Foods the amount of GFF's bid, AWG received a $400,000 bid from Pratt Foods. AWG called GFF, and advised them that AWG had received a higher bid for the Norman store, and later gave GFF the opportunity to rebid and beat the Pratt Foods bid. GFF chose not to rebid but to stand on its rights based on the claimed contract to sell for $350,000.

GFF brought suit claiming breach of contract and fraud. AWG moved for judgment on the pleadings on the contract claim pursuant to Federal Rule of Civil Procedure 12(c), and both parties briefed the matter. GFF did not formally incorporate by reference or append the letter to its complaint, but attached it as an exhibit to its brief in opposition to the 12(c) motion. AWG also attached the letter as an exhibit to its brief in support of the 12(c) motion. GFF then filed an amended complaint which rendered the 12(c) motion moot. Again, GFF did not formally incorporate by reference or append the letter to its amended complaint, but frequently referred to it and alleged it satisfied the statute of frauds.

AWG moved to dismiss the contract claim pursuant to Rule 12(b)(6), arguing that the letter was insufficient to satisfy the statute of frauds. Both parties essentially incorporated by reference their briefs on the 12(c) motion. The district court granted AWG's 12(b)(6) motion, expressly considering the letter. AWG then moved for summary judgment pursuant to Rule 56 on the fraud claim, and the district court granted that motion as well. GFF moved for reconsideration of the dismissal of its contract claim, arguing for the first time that the court should have applied auction law principles to the case, and that newly discovered evidence supported an argument that several documents together satisfied the statute of frauds. The district court denied the motion.

On appeal, GFF argues that the district court erred in dismissing the contract claim (1) by not converting the 12(b)(6) motion into one for summary judgment based on its consideration of outside material, (2) by not then considering outside materials on the motion for reconsideration, (3) in concluding that the statute of frauds was not satisfied, and (4) by failing to find an implied contract. GFF also appeals from the entry of summary judgment on its fraud claim, contending that the district court erred in concluding GFF was not damaged.

Discussion

I. Dismissal of Breach of Contract Claim

As the sufficiency of a complaint is a question of law, we review de novo the district court's grant of a motion to dismiss pursuant to 12(b)(6). See Bangerter v. Orem City Corp., 46 F.3d 1491, 1502 (10th Cir. 1995); Housley v. Dodson, 41 F.3d 597, 598 (10th Cir. 1994). A 12(b)(6) motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see Ash Creek Mining Co. v. Lujan, 969 F.2d 868, 870 (10th Cir. 1992). All well-pleaded factual allegations in the complaint are accepted as true, see Ash Creek Mining Co., 969 F.2d at 870, and viewed in the

light most favorable to the nonmoving party, see Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

## A. Conversion to Summary Judgment

First, GFF argues that the district court erred by not converting AWG's 12(b)(6) motion into one for summary judgment when the court explicitly considered outside material in its ruling. GFF argues further that based on this failure to convert, the district court erred in refusing to consider outside materials presented on GFF's motion for reconsideration of the dismissal of its contract claim. GFF did not argue before the district court either that the letter should be excluded from the court's consideration or that the motion should be converted to one for summary judgment. Generally, such failure to present an issue to the district court results in waiver, see Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 721 (10th Cir. 1993); 10th Cir. R. 28.2(b), but because GFF's opposition to the 12(c) motion argued that the appropriate test was like that for a summary judgment motion, we will consider the argument.

A 12(b)(6) motion must be converted to a motion for summary judgment if "matters outside the pleading are presented to and not excluded by the court" and "all parties . . . [are] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b). The failure to convert a 12(b)(6) motion to one for summary judgment where a court does not

exclude outside materials is reversible error unless the dismissal can be justified without considering the outside materials. See Brown v. Zavaras, 63 F.3d 967, 970 (10th Cir. 1995). Notwithstanding these general principles, if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss. See Romani v. Shearson Lehman Hutton, 929 F.2d 875, 879 n.3 (1st Cir. 1991); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196-97 (3d Cir. 1993); Venture Assoc. Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 431 (7th Cir. 1993); New Beckley Mining Corp. v. United Mine Workers or Amer., 18 F.3d 1161, 1164 (4th Cir. 1994); Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994); Weiner v. Klais & Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997); Brooks v. Blue Cross & Blue Shield of Florida, Inc., 116 F.3d 1364, 1369 (11th Cir. 1997).

If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied. Moreover, conversion to summary judgment when a district court considers outside materials is to afford the plaintiff an opportunity to respond in kind. When a complaint refers to a document and the document is central to the

plaintiff's claim, the plaintiff is obviously on notice of the document's contents, and this rationale for conversion to summary judgment dissipates.

We now turn to the case at hand, in which the letter was the only material other than the complaint considered by the district court. GFF did not attach the letter to its amended complaint, nor properly incorporate the letter by reference. Despite these omissions, GFF did not dispute the authenticity of the letter. Indeed, GFF frequently referred to and quoted from the letter in its amended complaint, and alleged that the letter alone satisfied the statute of frauds. GFF also attached the letter as an exhibit to its opposition to the 12(b)(6) motion, via incorporation by reference of its 12(c) opposition, and referred to the letter (in some instances as the contract itself) throughout its brief. For these reasons, we conclude that the letter was indisputably authentic and central to GFF's breach of contract claim. The district court, therefore, properly considered the letter submitted by AWG as not "outside the pleading" for purposes of the 12(b)(6) motion. It follows that the district court also did not err in refusing to consider outside materials on motion for reconsideration of its ruling on the unconverted 12(b)(6) motion.

## B. Statute of Frauds

GFF next argues that the district court committed error in concluding that the letter was insufficient to satisfy the Oklahoma statute of frauds. The court

determines as a matter of law whether the memoranda, letters, or other writings relied upon are sufficient to satisfy the statute of frauds. See Joseph E. Seagram & Sons, Inc. v. Shaffer, 310 F.2d 668, 675 (10th Cir. 1962) (interpreting Oklahoma law). Although a party may allege in its complaint that a writing satisfies the statute, the document controls when it is properly before the court. See Jackson v. Alexander, 465 F.2d 1389, 1390 (10th Cir. 1972); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1327 & n.14 (2d ed. 1990) (Wright & Miller). Mere legal conclusions and factual allegations that contradict such a properly considered document are not well-pleaded facts that the court must accept as true. See Jackson, 465 F.2d at 1390; 5 Wright & Miller § 1327 & n.14.

The Oklahoma statute of frauds provides that "[t]he following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged . . . (5) An agreement for . . . the sale of real property, or of an interest therein . . . ." Okla. Stat. Ann., tit. 15, § 136 (West 1996). Although the writing need not be thorough or complete in its detail, it must contain all material terms of the alleged contract so that resort to parol evidence is not necessary to establish them. See Pettigrew v. Denwalt, 431 P.2d 333, 337 (Okla. 1967); Joseph E. Seagram & Sons, Inc., 310 F.2d at 674 ("[A]ny missing link which requires resort to oral evidence to connect or establish the

agreement is fatal.").  To avoid resorting to parol evidence, a written offer to sell

real property must generally be accepted in writing to form a valid contract.  See

Anderson v. Garrison, 402 P.2d 873, 874, Syl. ¶ 4 (Okla. 1965); Tiffany v.

Rothschild, 258 P.2d 629, 630, Syl. ¶ 1 (Okla. 1953).  On this point, we have

stated:

> The memorandum or writing required by the statute must show an existing and binding contract, a concluded agreement, a meeting of the minds of the parties as distinguished from mere negotiations.  It is an incomplete contract where the parties have left an essential part of the agreement for future determination.

 Joseph E. Seagram & Sons, Inc., 310 F.2d at 674.

GFF alleged in its amended complaint that the letter itself satisfies the

statute of frauds.  Aplt. App. at 181 ¶ 44.  On appeal, GFF argues that this

allegation is accurate because the letter contains all material terms to a contract

for the sale of real property:  the parties, price, subject matter, and covenants that

purchase and supply agreements and other necessary documents will be executed.

Though all of this information is present, the letter is plainly contingent and does

not evidence acceptance by AWG.

The letter reads:

> In the event that AWG consummates the proposed transaction with Homeland and in the event that you are the successful offeror on such store(s), this letter confirms your commitment and agreement to purchase the store or stores at the purchase price shown below . . . .
> . . . If the foregoing accurately reflects your understanding of the proposed transaction between you and AWG, please execute this letter

and return it to my attention. Additionally, by executing below, you agree to execute appropriate purchase and supply agreements and other necessary documents in regard to consummating the proposed purchase of the Store(s).

In the event there are other parties interested in the Store(s), then AWG will contact you as to the procedures we will follow in selling the Store(s).

Aplt. App. at 367. This letter not only omits material details of the transaction, such as the method of payment, but expressly provides that no final agreement had been reached, and additional matters remained to be negotiated. Indeed, at the time the letter was prepared by AWG, AWG had no knowledge of just how much GFF might fill in as its bid. The letter cannot be a valid acceptance by AWG to form a final, enforceable agreement when GFF had not yet conveyed its offer amount to AWG. Moreover, GFF admitted that if its attorneys thought the requisite additional documents contained unfavorable terms, GFF would negotiate them. See Aplt. App. at 1482, 1485, 1487. Thus, the letter fails to satisfy the Oklahoma statute of frauds, and our conclusion controls in spite of the allegations in GFF's amended complaint.

GFF argued on motion for reconsideration that the letter, escrow money deposit agreement that AWG began to prepare, and bid tally sheets showing GFF was the high bidder are together sufficient to satisfy the statute of frauds. GFF did not make this argument until its motion for reconsideration, and it was therefore untimely. See Steele v. Young, 11 F.3d 1518, 1520 n.1 (10th Cir.

1993); 11 Wright & Miller § 2810.1 & n.21. If we assumed, arguendo, that GFF's argument is properly based on discovery of new evidence--the bid tally sheets--making reconsideration appropriate, the bid tally sheets and deposit agreement were insufficient because they were not exchanged by the parties. Oklahoma law excuses the lack of delivery of an executed deed or lease, see Gall v. Brashier, 169 F.2d 704, 708 (10th Cir. 1948) (interpreting Oklahoma law), but still follows the general rule that for multiple documents to satisfy the statute of frauds they must pass between the parties, see Thompson v. Giddings, 276 P.2d 229, 230 Syl. ¶ 1 (Okla. 1954). The district court did not abuse its "considerable discretion" in denying the motion for reconsideration under these circumstances. Brown v. Presbyterian Healthcare Servs., 101 F.3d 1324, 1332 (10th Cir. 1996) (stating relevant standard), cert. denied, 117 S. Ct. 1461 (1997).

Relying on Capital City Brick Co. v. Atlantic Ice & Coal Co., 63 S.E. 562, 565 (Ga. Ct. App. 1909), GFF maintains that an affidavit by AWG's executive vice president takes the parties' agreement outside the statute because it contains an admission of the agreement. Even if this affidavit were considered, Capital City requires that the alleged admission show or admit terms that are "coextensive" with those of the purported contract. Capital City, 63 S.E. at 565; cf. Teel v. Harlan, 185 P.2d 695, 697 (Okla. 1947) (citing Capital City with approval). The affidavit here does not admit a final agreement, but evidences the

contemplation of further negotiations. See Aplt. App. at 1375 ¶ 14; Joseph E. Seagram & Sons, Inc., 310 F.2d at 674.

GFF makes various untimely or unpersuasive arguments that it was not making an offer by way of its written bid, but accepting AWG's written offer supposedly contained in the AWG-provided bid form. First, GFF argues that the district court's consideration of GFF as the offeror was an erroneous failure to view the facts in the light most favorable to GFF. Because the letter GFF executed refers explicitly to GFF as the "offeror," we see no error in the court's refusal to view GFF as the complete opposite. See Jackson, 465 F.2d at 1390.

Second, GFF argues that the term "offeror" in the letter should be construed against AWG as the draftsman. This rule of interpretation, however, is only applied if there is an ambiguity, and generally would not be invoked to contradict the plain and ordinary meaning of the term. See Dismuke v. Cseh, 830 P.2d 188, 190 (Okla. 1992).

Third, GFF argues that it was accepting AWG's offer to bid based on auction law principles which reverse the usual roles of offeror and acceptor. As GFF admitted at oral argument, it did not ask the district court to apply these principles until its motion for reconsideration. At that time it is ordinarily inappropriate for a party to raise new legal arguments. See Steele, 11 F.3d at 1520 n.1.

## C. Implied Contract

Finally, GFF argues that the district court erred by not considering whether GFF stated a claim for breach of implied contract. GFF did not respond to AWG's 12(b)(6) motion with an implied contract argument, and did not affirmatively make such an argument on its motion for reconsideration. Thus, at either stage, motion for reconsideration or appeal, this argument is untimely. See Lyons, 994 F.2d 716, 721 (10th Cir. 1993); 10th Cir. R. 28.2(b); see also Steele, 11 F.3d at 1520 n.1. Nevertheless, we shall address it because GFF's amended complaint does make allegations which sound in the nature of implied contract. An implied contract, however, is no less within the statute of frauds than is an express contract, and our analysis above therefore controls. See Krause v. Dresser Indus., Inc., 910 F.2d 674, 679 (10th Cir. 1990) (analyzing implied contract under Oklahoma statute of frauds, but finding contract to be performed within one year). Our disposition of GFF's breach of contract claim based on its failure to satisfy the statute of frauds renders GFF's remaining arguments moot.

## II. Summary Judgment Against GFF on its Fraud Claim

GFF contends that the district court erred in granting summary judgment in favor of AWG on GFF's fraud claim. We review de novo the grant of summary judgment, applying the same legal standard as that used by the district court. See Phelps v. Hamilton, 122 F.3d 1309, 1317 (10th Cir. 1997). Summary judgment is

proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  We view the evidence and draw any inferences in a light most favorable to the nonmovant.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  A movant need only point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

With respect to GFF's fraud claim, GFF's sole argument on appeal is that the district court erred in concluding that GFF cannot show damages.  GFF fails to address the district court's alternative ground for granting summary judgment-- that there was no evidence of misrepresentation that there would be no competitive bidding.  GFF has therefore conceded that there was no misrepresentation, and consequently cannot establish an essential element of its fraud claim.  See Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1547 (10th Cir. 1995) (declining to consider inadequately briefed issue).

AFFIRMED.