FILED
United States Court of Appeals
Tenth Circuit

June 6, 2012

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

| | |
|---|---|
| ROBERT G. WING, as Receiver for VESCOR CAPITAL CORP., a Nevada corporation, VESCOR CAPITAL, INC., a Nevada corporation, VESCORP CAPITAL, LLC, a Nevada limited liability company, VESCORP CAPITAL IV-A, LLC, a Nevada limited liability company, and VESCORP CAPITAL IV-M, LLC, a Nevada limited liability company, | No. 11-4006 D. Utah (D.C. No. 2:08-CV-00776-DB) |
| Plaintiff - Appellee, | |
| v. | |
| BRUCE J. DOCKSTADER; MARILYN DOCKSTADER; DOCKSTADER FAMILY TRUST DTD 4/24/91; DOCKSTADER FAMILY TRUST DTD 5/8/91, | |
| Defendants - Appellants. | |

ORDER AND JUDGMENT[*]

Before **MURPHY**, **HOLLOWAY**, and **GORSUCH**, Circuit Judges.

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    Introduction

On October 6, 2008, plaintiff-appellee Robert G. Wing, the court-appointed receiver for Vescor, Inc.*,* brought suit under Utah's Uniform Fraudulent Transfer Act ("UFTA") against defendant-appellants Bruce J. Dockstader, Marilyn Dockstader, Dockstader Family Trust dtd 4/24/91, and Dockstader Family Trust dtd 5/8/91 (collectively "the Dockstaders").  The suit sought to void certain allegedly fraudulent transfers the Dockstaders received from Vescor, a now-defunct corporation formerly controlled by Val Southwick, in the course of their dealings with the company.  *See* Utah Code Ann. § 25-6-8(1)(a).  The district court granted summary judgment in favor of the Receiver, and the Dockstaders appeal.  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, the court **affirms**.

## II.    Background

In 2008, Val Southwick pleaded guilty to nine felony counts of securities fraud in connection with a Ponzi scheme he ran through a complex network of corporations and limited liability companies.  The United States Securities and Exchange Commission filed suit against Southwick and Vescor, the principal entity through which Southwick orchestrated his scheme, on February 6, 2008.  On May 5, 2008, the district court appointed Wing as Receiver for Vescor.  The district court granted summary judgment in favor of the Receiver on December 3, 2010.  The judgment against the Dockstaders totaled $671,702.66.  On appeal, the Dockstaders argue the Receiver lacked standing, the relevant statute of limitations

expired before the Receiver filed suit, and the methodology used to compute the amount of the judgment was flawed.

## III. Discussion

### A. *Standard of Review*

The court reviews the district court's summary judgment order de novo, applying the same standard as the district court. *Doe v. City of Albuquerque*, 667 F.3d 1111, 1122 (10th Cir. 2012). Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### B. *Standing*

The Dockstaders challenge the Receiver's standing to sue under the UFTA, arguing the statute does not create any remedies for receivers and that the receivership order did not empower Wing to bring claims on behalf of the creditors and/or investors of Vescor. The district court rejected this argument, relying on *Scholes v. Lehmann*, 56 F.3d 750, 753–55 (7th Cir. 1995).[1] In *Scholes*, a panel of the Seventh Circuit held a receiver of an entity which was used to perpetrate a Ponzi scheme has standing to recover fraudulent transfers as though the receiver were a creditor of the scheme. *Id.* The reasoning in *Scholes* has been endorsed by the Second and Ninth Circuits. *See Donnell v. Kowell*, 533 F.3d 762,

---

[1]The district court had rejected similar challenges to the standing of the Receiver in other ancillary cases similar to this case. *See Wing v. Hammons*, No. 2:08-cv-620, 2009 WL 1362389 (D. Utah May 14, 2009).

776–77 (9th Cir. 2008) (applying *Scholes* to California's Uniform Fraudulent Transfer Act); *Eberherd v. Marcu*, 530 F.3d 122, 132–33 (2d Cir. 2008) (applying *Scholes* to New York Debtor & Creditor Law § 276). This court finds the reasoning in these cases persuasive, and therefore rejects the argument that the Receiver lacks standing in this case.[2]

*C.     Ponzi Presumption*

Much of the district court's analysis turned on its conclusion that there was no genuine dispute of material fact that Vescor and its associated entities operated as one large Ponzi scheme. Under the UFTA, once it is established that a debtor acted as a Ponzi scheme, all transfers by that entity are presumed fraudulent. *See Donnell*, 533 F.3d at 770 ("The mere existence of a Ponzi scheme is sufficient to establish actual intent to defraud." (quotation and alteration omitted)). Before the district court, the Receiver submitted the twenty-eight-page declaration of Gil Miller, a forensic accountant who concluded Vescor "exhibited characteristics of a Ponzi scheme at least as early as the year 2000." The Receiver also submitted testimony from former Vescor employees, such as Monique Fisher, a former controller for Vescor who testified Vescor commingled investor money. Initially,

_____

[2]In support of their argument that *Scholes* should not be followed, the Dockstaders cite a bankruptcy case from the District of Arizona, *Aaron v. Rosepink (In re Global Grounds Greenery, LLC)*, 405 B.R. 659, 664–65 (Bankr. D. Ariz. 2009). The district court concluded *Global Grounds Greenery* was unpersuasive and applied only in the context of bankruptcy proceedings. This court agrees.

in their written opposition to the Receiver's motion for summary judgment, the Dockstaders did not dispute that Vescor was a Ponzi scheme. Immediately prior to oral argument before the district court, the Dockstaders moved to supplement their memorandum opposing summary judgment in order to challenge whether the Ponzi presumption applies to Vescor transactions. The district court denied the motion. As counsel for the Dockstaders reluctantly acknowledged at oral argument, this ruling has not been adequately challenged on appeal. "[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief." *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007). Further, "[s]cattered statements in the appellant's brief are not enough to preserve an issue for appeal." *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1133 n.4 (10th Cir. 2004). Moreover, because the evidentiary materials upon which the Dockstaders now rely in an attempt to establish a disputed issue of material fact as to whether Vescor was a Ponzi scheme were never properly submitted to the district court, they are not part of the record on appeal. *See Utah v. U.S. Dep't of Interior*, 535 F.3d 1184, 1195 n.7 (10th Cir. 2008) ("[N]ew evidence not submitted to the district court is not properly part of the record on appeal."). The court therefore declines to review the district court's application of the Ponzi presumption to all Vescor transactions.

*D.     Statute of Limitations*

The Dockstaders argue the statute of limitations has run on any of the Receiver's claims pertaining to transactions which occurred before October 6, 2004, four years prior to the date the Receiver filed suit against them.  The UFTA provides:

> A claim for relief or cause of action regarding a fraudulent transfer or obligation under this chapter is extinguished unless action is brought:
>
> > (1) under Subsection 25-6-5(1)(a), within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant . . . .

Utah Code Ann. § 25-6-10.  The Dockstaders further argue that section 25-6-10 is a statute of repose, which is not subject to equitable tolling.  *See Amco Prod. Co. v. Newton Sheep Co.*, 85 F.3d 1464, 1472 (10th Cir. 1996) ("While [a statute of limitations] . . . is 'a procedural device that operates as a defense to limit the remedy available from an existing cause of action,' a statute of repose, in contrast, 'creates a substantive right in those protected to be free from liability after a legislatively-determined period of time.'" (quoting *Webb v. United States*, 66 F.3d 691, 700–01 (4th Cir. 1995)).  Thus, the Dockstaders argue, the Receiver's right to enforce fraudulent transfer claims runs from the time each such transfer took place, not the date of his appointment.  Regarding the one-year discovery period set forth in the limitations statute, the Dockstaders urge that the

phrase "could reasonably have been discovered" refers to when an objectively reasonable claimant could have discovered the transfer.[3] According to the complaint, Vescor was sanctioned by the Utah Department of Commerce as early as 2002 for offering and selling unregistered securities. The Dockstaders therefore argue a reasonable claimant could have discovered any allegedly fraudulent transfers by that date. Further, because the complaint established that the Vescor Ponzi scheme collapsed on May 31, 2006 when Southwick was unable to make sufficient payments to investors, the Dockstaders argue a reasonable claimant certainly could have discovered any fraudulent transfers by then. The Dockstaders thus conclude the Receiver cannot benefit from the one-year tolling period because it would have run, at the latest, by May 31, 2007, almost a year-and-a-half before the Receiver initiated this action.

The one-year tolling period in section 25-6-10 refers to when a transfer could reasonably have been discovered "by *the* claimant." (emphasis added). The district court concluded the Receiver's action was timely filed because the Receiver could not reasonably have discovered any fraudulent transfer prior to his appointment. Because the Receiver was appointed on May 5, 2008 and filed this action just over five months later, the court concluded the Receiver's claims were

---

[3]In support of this contention, the Dockstaders cite *SASCO 1997 NI, LLC v. Zudkewich*, 756 A.2d 469 (N.J. 2001), and *Gulf Insurance Co. v. Clark*, 20 P.3d 780 (Mont. 2001). Neither case involves a receivership or a Ponzi scheme. The court is therefore unpersuaded that Utah would adopt such a rule in the context of this case.

-7-

timely brought. The district court also concluded Utah would likely adopt the "adverse domination" theory for purposes of computing the statute of limitations. Under the adverse domination theory, "as long as a corporation is controlled or 'dominated' by wrongdoers against whom a cause of action exists, the statute of limitations is tolled because the wrongdoers cannot be expected to bring an action against themselves." *Saunders v. Sharp*, 793 P.2d 927, 932 (Utah. App. 1990) (declining to extend doctrine to excuse failure to preserve issue for appeal). This court agrees. A contrary rule would perversely foreclose from recovery early transfers in a Ponzi scheme which is successfully run for a long period of time. Applying the adverse domination theory to this case, all available evidence established that Southwick used the Vescor entities in a coordinated scheme to defraud investors. The entities therefore could not reasonably have been expected to bring claims against themselves, and the district court appropriately concluded the Receiver's claims were brought within the applicable statute of limitations.

E.    *Tax Offsets*

The Dockstaders argue they should be entitled to offset from the judgment any taxes they paid on the monies they received from Vescor. The Dockstaders cite no authority supporting this argument. The district court, following *Donell*, concluded allowing offsets would frustrate the purposes of the UFTA because there is no principle by which they could be limited, it would introduce difficult problems of proof and tracing into each case, and any amount offset would

necessarily come at the expense of other investors. *See* 533 F.3d at 779. This court agrees. The district court correctly concluded the Dockstaders are not entitled to offset taxes paid on their gains from the Vescor Ponzi scheme.

*F.      Referral Fees*

The district court's judgment against the Dockstaders included amounts Bruce Dockstader received in exchange for referring new investors to Vescor. Bruce Dockstader received $146,140 from Vescor for providing contact information for Vescor to others interested in investing with Vescor. The Dockstaders argue these payments are not voidable under the UFTA because they were made in good faith in exchange for reasonably equivalent value. The UFTA provides: "A transfer or obligation is not voidable under Subsection 25-6-5(1)(a) against a person who took in good faith and for a reasonably equivalent value . . . ." Utah Code. Ann. § 25-6-9(1). The Dockstaders argue their good faith was established because there has been no allegation they were ever aware Vescor was operating as a Ponzi scheme. The Dockstaders further argue that, by providing investors to Vescor, Bruce Dockstader provided the company with an economic benefit for which he is entitled to retain his 5% referral fee.

The Dockstaders rely on several bankruptcy cases for the proposition that the determination as to whether reasonably equivalent value was given should not take into account the impact the services had on perpetuating the fraudulent scheme. No reason is given to apply these bankruptcy cases in the context of a

-9-

receivership action under the UFTA.[4]  Outside the bankruptcy context, other circuits have rejected the Dockstaders' position.  *See Warfield v. Byron*, 436 F.3d 551, 560 (5th Cir. 2006) ("It takes cheek to contend that in exchange for the payments he received, the . . . Ponzi scheme benefited from his efforts to extend the fraud by securing new investments.").  In any event, because the Dockstaders addressed only one of two alternate grounds upon which the district court based its order, they cannot prevail on this issue.  *See GFF Corp. v. Assoc.'d Wholesale Grocers, Inc.*, 130 F.3d 1381, 1387–88 (10th Cir. 1997) (noting party's failure to address alternative ground for district court's summary judgment order amounts to concession of that ground).  The district court concluded the Dockstaders are not entitled to retain any referral fees because Bruce Dockstader was not a licensed securities broker.  Under Utah law it is unlawful for any person to transact business as a broker-dealer or agent unless licensed by the state.  Utah Code Ann. § 61-1-3(3).  The Dockstaders cannot assert any right founded upon an illegal contract.  *Sender v. Simon*, 84 F.3d 1299, 1307 (10th Cir. 1996).  Because the Dockstaders did not challenge this basis for the district court's opinion until their reply brief, the issue is forfeited.  *United States v. Murray*, 82 F.3d 361, 363

---

[4]Among the bankruptcy courts, there is a split of authority on whether commissions paid for referrals into a Ponzi scheme constitute voidable fraudulent transfers.  *Compare Merrill v. Allen (In re: Universal Clearing House Co.)*, 60 B.R. 985, 1000 (Bankr. D. Utah 1986), *with Martino v. Edison Worldwide Capital (In re Randy)*, 189 B.R. 425, 438 (Bankr. N.D. Ill. 1995).

n.3 (10th Cir. 1996) ("We decline to consider arguments raised for the first time in a reply brief.").

## IV.     Conclusion

For the foregoing reasons, the judgment of the district court is **affirmed**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge